**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON**

**NATHAN LAWRENCE CUNNINGHAM,**
     **Plaintiff,**

**v.**                                        **Civil Action No. 3:16-CV-02525**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

     **Defendant.**

**<u>MEMORANDUM OPINION</u>**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for child's insurance benefits and supplemental security income (SSI) under the Social Security Act. The parties consented to the undersigned United States Magistrate Judge ordering the entry of final judgement. Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12).

On July  26, 2012, Nathan Lawrence Cunningham (Claimant) filed an application for child's insurance benefits alleging disability as of November 30, 2008 (Tr. at 210-222). On the alleged disability onset date, Claimant was 21 years old.  He claimed disability due to bipolar disorder, attention deficit hyperactivity disorder (ADHD),  depression, back pain and right leg pain (Tr. at 237).  The Commissioner of Social Security (Defendant) denied Claimant's applications  initially and on reconsideration.  Claimant requested a hearing before an Administrative Law Judge (ALJ) on May 2, 2013. On July 23, 2014, the ALJ held a video hearing. Claimant appeared in Huntington, West Virginia, and the ALJ presided over the hearing from St. Louis, Missouri.  On August 25, 2014, the ALJ issued a decision finding Claimant not disabled

under the Act (Tr. at 18-28). On November 18, 2015, a Notice of Appeals Council Action informed Claimant that the Appeals Council was reviewing the ALJ's decision[1] (Tr. at 203-206).   On January 14, 2016, the Appeals Council issued a Decision denying Claimant's applications for SSI and child's insurance benefits (Tr. 1-9).   Thereafter, Claimant filed the instant civil action.

## Claimant's Background

Claimant was born on December 18, 1986, and was 22 years old as of his alleged disability onset date in  2008 (Tr. at 20).  Claimant went to school through eleventh grade. Claimant has no work history and receives food stamps (Tr. at 43-44).  During the relevant period, Claimant lived in an  apartment with his girlfriend, and two other close friends (Tr. at 592).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2015).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment

---

[1] The Notice dated November 18, 2015 stated "We plan to issue a decision finding that you were not disabled under sections 223(d) and 1614(a)(3)(A) of the Social Security Act, based on your applications for Child's Insurance benefits filed on July 26, 2013, and Supplemental Security Income filed on June 18, 2012" (Tr. at 204).

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

Appeals Council

The scope of review of the Appeals Council is limited. The Appeals Council (AC) will consider all the evidence of the hearing before Administrative Law Judge as well as any new and material evidence submitted which relates to the period on or before the date of the hearing decision of the ALJ. After reviewing all the evidence in the hearing record and any additional evidence received, the Appeals Council may affirm, modify or reverse the hearing decision. If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence. The Appeals Council's decision is binding unless the claimant or another party files an action in federal district court, or the decision is revised. Richard C. Ruskell, Social Security Disability Claims Handbook, 2016 Edition.

3

<u>Sequential Evaluation</u>

In this particular case, the ALJ determined that Claimant has not engaged in substantial gainful activity since November 30, 2008, the alleged onset date (Tr. at 20).  The ALJ found that Claimant has the severe impairments of obesity, intellectual disability, attention deficit hyperactivity disorder, fracture of the lower limb and degenerative disc disease.  (*Id.*)  Under the second step, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  The ALJ found that Claimant has the residual functional capacity to perform light work limited to unskilled, simple, routine, repetitive tasks with simple instructions, no high production demands, no interaction with the public and only minimal or indirect contact with others (Tr. at 23). Transferability of job skills is not material to the determination of disability in this case because Claimant has no past relevant work (Tr. at 26).  The ALJ held that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.*)  Claimant could perform positions of produce weigher, backer racker, garment bagger, grader/sorter, bench worker and motor polarizer (Tr. at 27).  Upon this basis, the ALJ denied Claimant's applications for child's insurance benefits and supplemental security income.

Following Claimant's request for review, the Appeals Council issued a Decision of the Appeals Council (Tr. at 4-7).  The Appeals Council (AC) held that it agrees with the ALJ's findings under step 1 of the sequential evaluation that Claimant has not engaged in substantial gainful activity since November 30, 2008.  The AC did not agree with the ALJ's finding at step 2 of the sequential evaluation. The AC found that the ALJ's conclusion that Claimant has a severe impairment of intellectual disability "is not consistent with the longitudinal record" (Tr. at 4).  The AC stated:

The evidence of record does not contain any diagnosis of intellectual disability from an acceptable medical source nor does it contain any IQ scores that fall below 70.  The evidence of record indicates that the claimant was in special education.  However, the special education placement was not a result of intellectual disability.  The special education placement was due to behavioral issues and reading comprehension (Exhibit 4F/ page 10).  In 2000, the claimant underwent psychological testing and achieved a Full Scale IQ of 90 and a Performance score of 102 (Exhibit 4F/ page 3) and the claimant was diagnosed with borderline intellectual functioning in 2001 (Exhibit 3F/ page 6).

The hearing decision does not indicate that there is any evidence that the claimant experienced intellectual delays or deficits of adaptive function during the developmental period (prior to age 22).  Specifically, there is no evidence that supports subaverage functioning before the age of 22, as required by Listing 12.05.  The claimant did not demonstrate deficits initially manifested during the development period, which is a threshold requirement for a finding [of] intellectual disability.  The finding that the claimant did not exhibit deficits in adaptive functioning during the developmental period is supported by substantial evidence.  Education records also indicate that the claimant completed welding vocational training in 2003. (Tr. at 4-5).

The AC held that the ALJ's decision includes "an adequate evaluation" of Claimant's other severe impairments (Tr. at 5).  The AC adopted the ALJ's decisions findings with regard to consideration of Claimant's obesity, attention deficit hyperactivity disorder, fracture of the lower limb and degenerative disc disease under the required Listings.  (*Id.*)  Although the AC found these impairments severe, the AC did not find that one of these impairments or a combination of these meet or medically equal the severity of the Listings in 20 CFR Part 404, Subpart P, Appendix 1.  The AC found that Claimant's attention deficit hyperactivity disorder causes mild limitations in activities of daily living, mild limitations in social functioning, moderate limitations in concentration, persistence or pace and no episodes of decompensation of extended duration.  Furthermore, the AC agreed with the ALJ's decision findings under steps 3, 4 and 5. In conclusion, the AC decision denied Claimant's applications for Supplemental Security Income or child's

insurance benefits (Tr. at 6).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was

defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d

640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving

conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless,

the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v.

Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

<u>The Medical Record</u>

On November 5, 2012, Rakesh Wahi, M.D., conducted a consultative examination (Tr.

516). Claimant told Dr. Wahi that he was unable to work because of difficulty concentrating,  and

complained that he was unable to focus to finish a task (*Id.*)  He also reported that nine-years prior

he was in a motor vehicle accident and experienced back pain ever since.  He was able to dress

himself and shower, and denied any sexual dysfunction.  He  reported prior surgery on his right

ankle, and claimed that since his right ankle surgery he cannot fully move his ankle, use stairs, or walk more than 100 yards (Tr. at 517). During the examination, Claimant was alert, fully oriented, and cooperative (Tr. at 518). His cranial nerves were normal, and he limped slightly on his right leg (Tr. at 519). He was able to get on and off an examination table without difficulty, he was unable to walk on his heels and toes, but he maintained normal sensation and normal reflexes. (*Id.*) He complained of back pain with movement in his right shoulder. His straight leg raising test was positive at 70 or 80 degrees. (*Id.*)

Dr. Wahi concluded that Claimant's "symptoms of ADHD. . . prevent him from holding a job and interacting normally with people around him" (Tr. at 519). Dr. Wahi also concluded that Claimant's lumbar spine degenerative disc disease prevented him from carrying anything heavier than ten pounds, but also concluded that Claimant could carry out his activities of daily living, "but is not able to lift anything heavy." (*Id.*)

On November 8, 2012, Uma Reddy, M.D., a state agency physician, completed a physical residual functional capacity (RFC) assessment (Tr. at 81-83). She found that Claimant could lift up to 50 pounds occasionally, and 25 pounds frequently, and could stand, walk or sit for up to six hours in an eight-hour work day. (*Id.*)

On November 28, 2012, William C. Steinhoff, M.A., conducted a consultative psychological examination (Tr. at 520-526). He noted that Claimant's hair was unkempt and his eyes were bloodshot, but he was dressed appropriately, his posture and gait were normal and his psychomotor behavior was unremarkable (Tr. at 520). He was cooperative, arrived on time, and was driven by his girlfriend. (*Id.*) At the time, he was not receiving psychological counseling (Tr. at 522). Upon examination, his speech was slow but clear and coherent, he was fully oriented and depressed, his thought process was slow but coherent, and he had no bizarre

thought content (Tr. at 522-523).   Mr. Steinhoff reported that Claimant displayed: mildly impaired immediate memory; markedly  impaired recent memory; and normal remote memory (Tr. at 523).  His concentration was  moderately impaired and his general fund of knowledge was adequate.  His pace was  slow and his persistence was moderately impaired, but his social functioning was only mildly  impaired. (*Id.*)  He reported maintaining daily activities, such as contributing to household  chores and yardwork, he used a computer, and liked to "tinker with them and take them apart and  put them back together." (*Id.*)  His IQ scores ranged from 74 to 83, falling in the low  average range (Tr. at 524).

On  December  28,  2012,  Joseph  A.  Shaver,  Ph.D.,  a  state  agency  psychologist, completed  a psychiatric review technique and a mental RFC assessment (Tr. at 67-69, 71-73). He found that  Claimant was either not significantly limited, or moderately limited in a variety of workplace  activities related to social functioning, understanding and memory, adaptation and sustained  concentration and persistence (Tr. at 71-72).  Dr. Shaver specifically considered Mr. Steinhoff's  opinion and findings, and noted that Mr. Steinhoff's evaluation reflected only a  mild  impairment    in  social  functioning  (Tr.  at  73).    Dr.  Shaver  opined  that  Claimant maintained the ability to perform  work with only two-to-three step operations, limited social interaction, and minimal production  quotas. (*Id.*)

On  April  1,  2013,  Dominic  Gaziano,  M.D.,  a  state  agency  physician,  completed  a physical RFC assessment, confirming Dr. Reddy's prior findings (Tr. at 96-98).  On April 2, 2013, Holly Cloonan, Ph.D., another state agency psychologist, also  completed a psychiatric review technique and a mental RFC assessment (Tr. at 93-95, 97-99).  She  too found Claimant capable of performing a limited range of simple work, opining that Claimant was able to learn, recall and perform routine work-like activities involving simple instructions in settings that do

not require meeting production line schedules or interacting more than than occasionally or superficially with other.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ's decision is not supported by substantial evidence. Claimant argues that the ALJ failed to properly consider the medical evidence of record and the opinions of the consulting and examining sources regarding Claimant's mental and physical impairments.  Claimant asserts that the ALJ failed to incorporate the consulting and examining sources' opinions into the credibility determination and the residual functional capacity (RFC) assessment (ECF No. 11).

Defendant asserts that substantial evidence supports the ALJ's decision to award lesser weight to a consultative examiner's finding that Claimant's back condition limited him to lifting only 10 pounds.  Defendant argues that the consultative examiner's findings were contradicted by State agency physician opinions.  Defendant avers that medical imaging showed very minimal degenerative disc disease.  Defendant asserts that Claimant's received minimal conservative treatment after aggravating his back riding an ATV, moving furniture and carrying a television downstairs (ECF No. 12). Additionally, Defendant avers that substantial evidence supports the ALJ's finding that Claimant can perform a range of unskilled work with no interaction with the public and minimal interaction with others when Claimant "went a decade without mental health treatment, received only sporadic conservative treatment and a consultative examiner found he had a mild social impairment.  (*Id.*)

<u>Discussion</u>

The Appeals Council's decision is the final decision of the Commissioner. When the Appeals council considers a claimant's appeal and enters a decision – as is the case here – "it is

the Appeals Council['s] decision which constitutes the Commissioner's final decision for purposes of judicial review under 42 USC § 405(g)" see 20 CFR §§ 404.979, 404.981.  When the Appeals Council adopts an ALJ's opinion with modifications, the district court reviews "the decision of the ALJ as modified by the Appeals Council."  See *Arbogast v. Bowen*, 860 F.2d 1400, 1402 (7th Cir. 1988).

Claimant does not address the Appeals Council's decision (ECF No. 11).[2]  Claimant states that the Appeals Council denied Claimant's request for review of the ALJ's decision, when in fact, the Appeals Council issued a decision.  On January 14, 2016, a Notice of Appeals Council Decision stated "The enclosed decision is the final decision of the Commissioner of Social Security in your case" (Tr. at 1).  The Appeals Council's Decision was attached to the Notice (Tr. at 4-9).   Claimant's focus on the ALJ's decision, which is not the Commissioner's final decision, is enough for this Court to affirm the Appeals Council's decision. However, in an abundance of caution, this Court will address Claimant's arguments nonetheless.  See *Smith v. Colvin*, Case No. 1:14-cv-01147-JMS-DKL (Southern District of Indiana Indianapolis Division May 15, 2015).

The AC decision differs noticably from the ALJ's decision in two areas.  First, unlike the ALJ, in the second step of the sequential evaluation the AC did not find that Claimant suffers from the severe impairment of intellectual disability.  Second, the AC's evaluation of Claimant's mental impairments, singly and in combination, to determine whether "paragraph B" criteria are met differs from the ALJ's evaluation of the same.

The AC found that Claimant's attention deficit hyperactivity disorder causes mild limitations in activities of daily living; mild limitations in social functioning; moderate

---

[2] Defendant does  not address the Appeals Council's decision (ECF No. 11).  Defendant only states that the Appeals Council denied Claimant's request for review of the ALJ's decision.

limitations in concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. at 5).  The ALJ held that Claimant experienced mild limitations in activities of daily living; moderate limitations in social functioning; moderate limitations in concentration, persistence or pace;  and no episodes of decompensation of extended duration (Tr. at 21).

Claimant argues that the ALJ failed to reasonably justify why he gave Dr. Wahi's opinion "limited weight" (ECF No. 11).  Beyond Claimant's self-reported symptoms, the ALJ found that Dr. Wahi's notes reflected that Claimant exhibited a slight limp with the right leg but that Claimant had no difficulties getting on and off the examination table (Tr. at 24).  Dr. Wahi reported that Claimant could partially squat but could not walk on his heels or toes.  Claimant's sensation in his upper and lower extremities remained intact.  Dr. Wahi reported that Claimant's range of motion in the shoulders, elbows, wrists, hips, knees and left ankle remained normal. Although Dr. Wahi did suggest Claimant be limited to lifting 10 pounds, Dr. Wahi noted that Claimant was unable to "lift anything heavy."  Dr. Wahi found that Claimant was able to perform his activities of daily living.  The ALJ stated:

> Given the remote nature of this evaluation in comparison to more recent provided evidence, including lack of ongoing treatment and improvement with his condition with more recent imaging, the limitation to 10 pounds lifting does not appear to be well-founded. Likewise, the restriction was addressed as a self-imposed limit identified by the claimant during the evaluation and inconsistent with the subsequent note of restrictions from lifting "heavy" objects. Dr. Wahi's opinion thus, has limited weight (Tr. at 24-25).

Further, Claimant asserts that the ALJ failed to state what weight he attributed to Dr. Steinhoff's opinion.  The ALJ discussed the psychiatric consultative examination by Dr. Steinhoff (Tr. at 25).  The ALJ noted Claimant's IQ testing scores ranging from 74 to 83 with a full scale IQ of 75. The ALJ stated that Claimant performed his own personal care, occasionally washed dishes,

did some help with yard work at times, watched television, listened to music and tinkered with computers.  The ALJ noted that Dr. Steinhoff's examination notes indicated that Claimant experienced depressed mood, flat affect, slowed cohered thought process, limited insight and average judgment.  Dr. Steinhoff found Claimant had mild impairment in immediate memory and marked impairment in recent and normal remote memory.  The ALJ held that Dr. Steinhoff reported that Claimant had some difficulties with focus and following instructions, and moderate limitations with concentration.  Mr. Steinhoff diagnosed Claimant with slow pace, moderately impaired persistence, depression, bipolar disorder, social phobia and post-traumatic stress disorder (Tr. at 520-526).  The Adult Mental Profile conducted on November 28, 2012, by Mr. Steinhoff, reflects that Claimant reported that he "gets on the computer some" and that he "likes to tinker with them and take them apart and put them back together" (Tr. at 523).

The ALJ noted that Claimant developed a plan with his clinician to obtain his GED and get a job to support himself since his girlfriend moved out of their apartment. (*Id.*)  The ALJ pointed out that Claimant received very limited mental health treatment.  Claimant reported fixing his own food, doing some household activities, spending time with his girlfriend and her family, handling his finances and shopping.  Therefore, the ALJ found that few limitations in activities of daily living were supported.  The ALJ held that "Limitations in the claimant's ability to socialize were founded by his issues with anger issues" (Tr. at 25).

Claimant asserts that Dr. Wahi's opinion regarding Claimant's alleged severe mental limitations is supported by the findings of Mr. Steinhoff (ECF No. 11).  The AC found that Claimant does not have a severe impairment of intellectual disability (Tr. at 4-5). The AC held that the evidence of record does not contain a diagnosis of intellectual disability "from an acceptable medical source" (Tr. at 5).  Further, the AC held that the evidence of record does not

contain any IQ scores by Claimant that fall below 70.  (*Id.*)  The AC clarified that although Claimant was placed in special education, it was not a result of intellectual disability.  Instead, Claimant's special education placement was due to behavioral issues and reading comprehension.  The AC found that the record lacked any evidence that Claimant experienced intellectual delays or deficits of adaptive functioning during the development period when Claimant had not yet reached the age of 22 years old. The AC held that Claimant did not exhibit any of the intellectual disabilities threshold deficits in adaptive functioning.  (*Id.*)  Additionally, the AC pointed out that "Education records also indicate that the claimant completed a welding vocational training."   Therefore, Claimant has failed to demonstrate that the ALJ's determination to grant limited weight to the opinion of Dr.Wahi and to not give significant weight to the opinion of Mr. Steinhoff is not supported by the substantial evidence of the record.

In discussing the finding that Claimant did not have an impairment or combination of impairments that met a Listing, the ALJ held:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. (Tr. at 23).

The medical records reflect that Claimant received conservative treatment for his back and aggravated his back when he moved furniture and fell down the stairs, rode an ATV and carried a television on stairs.  X-rays were taken of Claimant's back following a motor vehicle accident (Tr. at 487).  The back x-ray was unremarkable, showing adequately maintained vertebral bodies and disc spaces (Tr. at 503).  There was no spondylosis or spondylolisthesis, no fracture and no destructive process.  (*Id*.)  In April 2011, Claimant had another lumbar x-ray and a thoracic x-ray. Both x-rays were unremarkable (Tr. at 507-508). Although Claimant returned to the ER a number

of times between May 2011 to September 2012, the accidents or illnesses were unrelated to his back condition or prior ankle fracture.

On January 21, 2014, Claimant presented to the ER after he slipped on ice and twisted his left ankle, however, he did not report any neck pain (Tr. at 690-691). X-rays of Claimant's ankle were normal and had no sign of acute sensorimotor deficit. In March 2014, Claimant returned to the ER with complaints of neck and back pain after an ATV accident where he hit a pole (Tr. at 567-568). A CT scan of his spine and head showed nothing acute (Tr. at 565). Claimant was diagnosed with lumbar strain and instructed to ice it that day then return to activity as tolerated (Tr. at 558). In April 2014, Claimant returned to the ER complaining of chronic back pain (Tr. at 553). Claimant was instructed to follow-up with his primary physician. On July 14, 2014, images of Claimant's lumbar spine showed mild disc space narrowing at L4-L5, minimal spurring at L3-L4, and L4-L5, and minimal physiologic anterior wedging (Tr. at 672). The overall impression of the image was "[v]ery minimal degenerative changes at L3-L4 and L4-L5" (Tr. at 671).

<u>Listing 1.02</u>

Listing 1.02 Major Dysfunction of a Joint: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2c; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

The ALJ stated that he gave "particular attention" to Listing 1.02 (Tr. at 21). The ALJ found that "the specified criteria required of the listing was not demonstrated by the available medical

14

evidence."

Listing 1.04

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ held that the medical evidence of record did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Further the ALJ addressed Claimant's alleged back impairment and found that "there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)." (*Id.*)

Listings 12.02, 12.04, 12.05 and 12.06

Listing 12.02 for Organic Mental Disorders describes organic mental disorders as "Psychological or behavioral abnormalities associated with a dysfunction of the brain." To demonstrate disability Claimant must satisfy requirements in paragraphs (A) and (B) or illustrate the requirements in paragraph (C) are satisfied.

Paragraph (A) requires Claimant to demonstrate a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or

15

2. Memory impairment, either short-term, intermediate, or long term; or
3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbances in mood; or
6. Emotional liability and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 IQ points from premorbid levels.

Paragraph (B) requires Claimant's mental impairment result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

In assessing Claimant's paragraph B criteria, the ALJ found Claimant to have "mild" limitation in activities of daily living. In social functioning and concentration, persistence or pace, the ALJ found Claimant to have moderate difficulties. The ALJ found Claimant to have no episodes of decompensation, of extended duration (Tr. at 21).

Paragraph (C) requires "medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or physo-social support and one of the following:"

1.  Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04 for Affective Disorders is characterized by a disturbance of mood,

accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged

emotion that colors the whole psychic life; it generally involves either depression or elation. To

demonstrate an impairment the Claimant must prove A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1 or 2:
   1. Depressive disorder, characterized by <u>five</u> or more of the following:
      a. Depressed mood;
      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.
   2. Bipolar disorder, characterized by <u>three</u> or more of the following:
      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem;
      d. Decreased need for sleep;
      e. Distractibility;
      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
   1. Understand, remember, or apply information (see 12.00E1).
   2. Interact with others (see 12.00E2).
   3. Concentrate, persist, or maintain pace (see 12.00E3).
   4. Adapt or manage oneself (see 12.00E4).[3]

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

---

[3] The limitations identified in "paragraph B" in Listings 12.02, 12.04 and 12.06 are the same as limitations identified in "paragraph D" of Listing 12.05.

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); **and**

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

The ALJ held that the evidence of record did not satisfy the criteria for Listing 12.04 (Tr. at 22). Listing 12.05 addresses mental disabilities including intellectual disability and contains "paragraph C" criteria that must be met.  Listing 12.05 on intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. 404 Subpart P, Appendix 1, Listing § 12.05.  In order to satisfy the listing requirements for intellectual disability, Claimant must meet the Listing description and one of the following four prongs:

(a) Mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning included, OR

(b) A valid verbal, performance, or full scale IQ of 59 or less, OR

(c) A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, OR

(d) A valid verbal, performance or full scale IQ of 60-70 resulting in at least one of the following:  (1)  Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3)  Marked difficulties in maintaining concentration, persistence, or pace; OR (4) Repeated episodes of decompensation, each of extended duration.

In assessing Claimant's mental impairments, the requirements in "paragraph A" are met when there is mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions.  The ALJ found that Claimant does not meet the paragraph A requirements "because evidence failed to identify the requisite dependence upon others" (Tr. at

22).  The ALJ held that Claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitations of function.  (*Id.*)

In addition, the AC held that the evidence of record does not contain any diagnosis of intellectual disability from an acceptable medical source "nor does it contain any IQ scores that fall below 70" (Tr. at 5).  The AC stated that "there is no evidence that supports sub-average functioning before the age of 22, as required by Listing 12.05."  (*Id.*)

Listing 12.06 for Anxiety Related Disorders states:  In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or complusions in obsessive compulsive disorders.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
    A.  Medically documented findings of at least one of the following:
    1.  Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
        a)      Motor tension; or
        b)      Autonomic hyperactivity; or
        c)      Apprehensive expectation; or
        d)      Vigilance and scanning;
    2.  A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation; or
    3.  Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
    4.  Recurrent obsessions or compulsions which are a source of marked distress; or
    5.  Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

    B.  Resulting in at least two of the following:
        1.  Marked restriction of activities of daily living; or
        2.  Marked difficulties in maintaining social functioning; or
        3.  Marked difficulties in maintaining concentration, persistence or pace; or
        4.  Repeated episodes of decompensation, each of extended duration.

OR

    C.  Resulting in complete inability to function independently outside the area of one's home.

Claimant has failed to demonstrate that he suffers from any severe impairments contained in the Listings.

<u>Weight of Medical Opinions</u>

Under 20 CFR 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner.  Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."  *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record."  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as

they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the AC are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the AC are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id*

<u>RFC</u>

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p. The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d at 636 (quoting S.S.R. 96-8p). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ

must consider the combined effect of a claimant's impairments.") (citations omitted).

The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." *Pearson v. Colvin,* 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. *Radford,* 734 F.3d at 296; *see also Brown v. Colvin,* 639 Fed.Appx. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding `in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. *See Mascio,* 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue,* 2011 WL 2688975, at *3 (E.D.Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).  The ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock v.*

*Astrue,* 667 F.3d 470, at 472 (4th Cir. 2012). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir.2013). The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox v. Colvin,* 632 Fed.Appx. 750, 754 (4th Cir.2015) (quoting *Radford,* 734 F.3d at 295).

The responsibility for determining a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 404.1546(c).  "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability."  SSR No. 96-5p.  An RFC assessment is "based on consideration of all relevant evidence in the case record."

<u>Credibility</u>

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal."  *Darvishian v. Green,* 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference").  When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged.  *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work.  *See* 20

C.F.R. §§ 404.1529(c) and 416.929.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight"). The Social Security Administration recently issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p and clarifies "adjudicators will not assess an individual's overall character or truthfulness." SSR 16-3p, 2016 WL 1119029, at *1, 10. That is, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin,* 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

<u>Conclusion</u>

In the present matter, Claimant has failed to demonstrate that his allegations of disabling impairments are valid and supported by the evidence of record and the medical opinions from Dr. Wahi and Mr. Steinhoff. Regarding Claimant's RFC analysis, substantial evidence supports the ALJ's finding that Claimant could lift up to twenty pounds. The ALJ noted that Dr. Wahi's reports are inconsistent. Therefore, substantial evidence supports that the ALJ properly considered the medical evidence of record. Further, the weight given to consulting and examining sources by

the ALJ, the ALJ's RFC assessment of Claimant and the ALJ's credibility determination of Claimant are supported by substantial evidence.

Accordingly, by Judgment Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) is **DENIED**, Defendant's Brief in Support of Defendant's Decision (ECF No. 12) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Date:   March 31, 2017.

Dwane L. Tinsley
United States Magistrate Judge